AO 91 (Rev. 12/93) Criminal Complaint

# United States District Court

_____ DISTRICT OF _____ DELAWARE _____

UNITED STATES OF AMERICA

v.                                                    **Criminal Complaint**

LAMAR D. HAMMOND                    CASE NUMBER: 05-101M

~~SEALED~~

REDACTED

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. From on or about __June 11, 2005__ in __New Castle__ County, in the District of __Delaware__, defendant(s) did knowingly and intentionally possess with intent to distribute more than 5 grams of cocaine base in violation of Title __21__ United States Code, Section(s) __841(a)(1) & (b)(1)(B)__; and did knowingly and intentionally possess with intent to distribute a mixture or substance containing a detectable amount of heroin in violation of Title __21__ United States Code, Section(s) __841(a)(1) & (b)(1)(C)__. I further state that I am a __Detective of the Wilmington Police Department__ and that this complaint is based on the following facts:

See attached Affidavit

Continued on the attached sheet and made a part hereof:   Yes

Signature of Complainant
Paul M. Ciber
Detective
Wilmington Police Department

Sworn to before me and subscribed in my presence,

__July 21, 2005__                                at __Wilmington, DE__
                                                       City and State

__United States DISTRICT Judge__
Name & Title of Judicial Officer            Signature of Judicial Officer

REDACTED

## AFFIDAVIT

Your affiant, PAUL M. CIBER, does solemnly swear that:

1. I am a sworn member of the Wilmington Police Department and have been so employed for approximately six years. I have attained the rank of Corporal and have been assigned as a detective to the Wilmington Police Department's Drug, Organized Crime and Vice Division for over one year. During the course of my law enforcement career, I have participated in several hundred criminal investigations involving violations of Delaware narcotic laws, which led to arrests, convictions and seizures of narcotics and proceeds gained from illegal activity. I have attended numerous schools and seminars specifically dealing with narcotic investigations including identification of controlled substances as well investigative techniques for dealing with drug traffickers.

2. The information contained in this affidavit is based on both my personal knowledge as well as information provided to me by other law enforcement officers who participated in this investigation. This affidavit is submitted in support of a criminal complaint against Lamar HAMMOND. Not all of the information known to me in this investigation is set forth in this affidavit, as it is made solely for the purpose of establishing probable cause.

3. In June 2005, members of the Wilmington Police Department's Drug, Organized Crime and Vice Division received information from a past proven reliable confidential informant (hereafter CI) that a black male subject known as "BARRY" was selling heroin in the vicinity of Market and East 24th Streets in Wilmington, Delaware. The CI provided a description of "BARRY" and provided his cell phone number, ▓▓▓▓▓▓▓ Pursuant to a prior state and federal heroin investigation, your affiant received information that an individual identified as Lamar HAMMOND was believed to reside at ▓▓▓▓▓▓▓, Wilmington, Delaware. Your

affiant displayed a photograph of HAMMOND with no identifiers to the CI who then identified HAMMOND as the person known to the CI as "BARRY".

4.  On June 11, 2005, at approximately 11:30am, surveillance was established in the vicinity of 6 EAST 24TH STREET. At that time, HAMMOND was observed in front of his residence ▮▮▮▮▮ engaging in conversation with several other young black males. Surveillance was maintained at the residence approximately two and a half hours during which time your affiant directed the CI to place several calls to HAMMOND's cell phone, number ▮▮▮▮▮, as witnessed by and under the supervision of your affiant. The CI requested HAMMOND to deliver twelve bundles of heroin to the CI. HAMMOND initially stated he did not have enough heroin but that he would get more and call the CI back. Simultaneous to one or more calls between the CI and HAMMOND, HAMMOND was observed by surveillance units on his cell phone. HAMMOND was also observed going into and out of ▮▮▮▮▮ on several occasions via the front door. During surveillance, HAMMOND was also observed engaging in activity consistent with hand to hand drug transactions with pedestrians and the vehicular occupants passing through the area. HAMMOND was also observed walking to the rear of his residence via the driveway on the east side of his residence and into the alley on the west side of his residence for brief periods of time.

5.  At approximately 1:45pm, HAMMOND called the CI and advised the CI that he was ready to do the transaction. HAMMOND told the CI to meet him in the vicinity of 30th and Monroe Streets in the City of Wilmington. Thereafter, HAMMOND again called the CI and attempted to change the meet location. Your affiant directed the CI to call HAMMOND and advise HAMMOND that the CI was already at the 30th and Monroe Street meet location. At that time, HAMMOND agreed to meet the CI at the original meet location and law enforcement

officers (LEO's) also established surveillance in the vicinity of 30th and Monroe Streets.

6. At approximately 2:20pm, HAMMOND was observed departing the vicinity of his residence and walking southbound on Market Street. At approximately 2:25pm, the CI advised your affiant that HAMMOND called the CI to advise that he was around the corner and was walking down the street to meet the CI. Shortly thereafter, HAMMOND was observed walking southbound in the 2900 block of Monroe Street. HAMMOND was approached by LEO's and was tossing an object under a vehicle parked on the west side of the street. LEO's secured HAMMOND and retrieved the object HAMMOND tossed under the vehicle. The object was discovered to be 130 small clear heat-sealed plastic bags contained a white powder substance sealed in blue wax paper stamped "P-FUNK". LEO's subsequently field-tested the powder from one of the bags, which indicated positive for heroin. Base upon your affiant's training and experience, each blue wax bag is believed to contain at least .02 grams of a substance containing heroin for a total of approximately 2.6 grams of a substance containing heroin.

7. At that time, HAMMOND was placed into custody and LEO's immediately responded to ▓▓▓▓▓▓▓▓ to secure the residence pending a search warrant. Your affiant and Detective George Taylor prepared an affidavit and obtained a search warrant for the residence which was issued by Delaware Justice of the Peace Court Judge Rosalie Rutkowski, Justice of the Peace Court# 20. Thereafter, the search warrant was executed which resulted in the seizure of approximately 260 small clear heat-sealed plastic bags contained a white powder substance subsequently field tested positive as heroin which was sealed in blue wax paper stamped "P-FUNK" and was concealed above the ceiling tiles in the back porch of the residence along with one clear knotted plastic sandwich bag containing an off white rock-like substance

subsequently filed tested positive as crack cocaine, a small digital scale and packaging materials. Based upon your affiant's training and experience, each blue wax bag is believed to contain at least .02 grams of a substance containing heroin for a total of approximately 5.2 grams of a substance containing heroin. The suspect crack cocaine had an approximate weight of 21.85 grams. Based on your affiant's training and experience, and on the form of the crack cocaine rocks and the amount of packaging, your affiant believes that the net weight of the crack cocaine exceeded 5 grams.

8. Pursuant to the search warrant, LEO's also recovered underneath the porch to HAMMOND's residence, on the east side, one clear knotted sandwich bag containing an off white rock-like substance subsequently filed tested positive as crack cocaine and determined to weigh approximately 6 grams and a small digital scale. LEO's also recovered 68 small clear heat-sealed plastic bags containing a white powder substance subsequently field tested positive as heroin which was sealed in blue wax paper stamped "STOP" from a trash can in the alley on the west side of the residence. Based upon your affiant's training and experience, each blue wax bag is believed to contain at least .02 grams of a substance containing heroin for a total of approximately 1.36 grams of a substance containing heroin. Following arrest, HAMMOND provided a post-Miranda videotaped statement wherein he acknowledged selling heroin and crack cocaine. HAMMOND acknowledged that he is called "BARRY" and also acknowledged ownership of the heroin and crack cocaine found inside his residence.

9. Based upon the CI calls, the observations of LEO's, the post-arrest statements of HAMMOND, and the amounts of drugs recovered, which are consistent with distribution, and your affiant's training, knowledge, and experience, it is your affiant's belief that the heroin and crack cocaine seized from HAMMOND was intended for distribution.

**WHEREFORE**, based on the above-stated facts, your affiant believes that there is probable cause that Lamar HAMMOND has committed the crime of knowingly possessing with the intent to distribute a mixture or substance containing a detectable amount of crack cocaine, a schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); and knowingly possessing with the intent to distribute a mixture or substance containing a detectable amount of heroin, a schedule I narcotic controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). In light thereof, your affiant respectfully prays that a criminal complaint be issued against HAMMOND.

I, the undersigned, swear that the above-stated facts are true to the best of my knowledge and belief.

_____
Detective Paul M. Ciber
Wilmington Police Department

Sworn to and subscribed before me
this __22__ day of July, 2005

_____
UNITED STATES DISTRICT JUDGE